Norman **SHUBINSKY**

v.

The **UNITED STATES.**

No. 264–72.

United States Court of Claims.

Dec. 19, 1973.

———◆———

John I. Heise, Jr., Silver Spring, Md., Atty. of record, for plaintiff; Leonard J. Meiselman, Mineola, N.Y., of counsel.

Paul A. Zoss, Washington, D.C., with whom was Acting Asst. Atty. Gen., Irving Jaffe, for defendant.

Before DAVIS, SKELTON and KUNZIG, Judges.

KUNZIG, Judge:

We are asked in this government employment case to determine whether plaintiff failed properly to pursue administrative remedies by bringing an untimely appeal of a reduction in force (RIF). We adopt plaintiff's view that the unusual circumstances which surrounded his RIF obviated his responsibility to pursue a timely administrative appeal prior to seeking judicial relief.

Plaintiff is a 10-point preference eligible under the Veterans' Preference Act of 1944 (VPA), 5 U.S.C. § 3309, having lost an arm in service during World War II. He was employed in a civilian capacity by the Department of the Navy at Brooklyn Naval Shipyard from 1942 to 1963, with two interruptions for military duty and to attend college. In 1963, he was transferred to the Naval Applied Science Laboratory (NASL), in Brooklyn, where he attained the position of Safety Officer, GS-9.

On October 27, 1969, plaintiff received a general notification of RIF which stated in part:

. * * * announced planned changes in missions and functional assignments for certain Navy Laboratories which as applicable to the Naval Applied Science Laboratory require, in essence, the following actions to be taken and completed during Fiscal Year 1970:

a. Transfer of the functions (except for Navigation and Crime Lab) of the Naval Applied Science Laboratory to other designated Laboratories of the Department of the Navy.

b. Separation of the personnel and functions of the Navigation Division and its related fields of science and engineering, which include the Crime Lab work, and establishing that division and its functions as the Naval Strategic Systems Navigation Facility at Brooklyn, New York, to be effective 1 November 1969.

c. Transfer of necessary support personnel to the above activity and *the elimination of all other remaining civilian positions in and the disestablishment of the Naval Applied Science Laboratory.* [Emphasis added.]

The notice went on to advise that, under personnel regulations applying to "liquidation" of an establishment, plaintiff would *not* be eligible to exercise preference-eligible "bump" or "retreat" rights to displace other employees in his competitive area. It further asserted that "[n]o appeal rights from this General Notice of Reduction in Force will be

considered by the U.S. Civil Service Commission" but added that plaintiff's "appeal rights" would be outlined in his specific notice of RIF.

Plaintiff's specific notice was issued on June 10, 1970 [1] and adivsed:

If you believe the reduction-in-force regulations have not been applied correctly in your case, you can appeal this action to the Civil Service Commission.

Under Civil Service regulations, such appeal was to be taken not more than 15 days following the RIF effective date. 5 C.F.R. § 351.901 (1970). Because of the representation in the General Notice of RIF that NASL had been "liquidated" and, consequently, that preference-eligible retention rights did not obtain, plaintiff saw no usefulness in appealing.

In May 1971, plaintiff learned that Jerome Richolson, a fellow NASL employee, had successfully appealed his RIF to the CSC. For the first time, plaintiff had reason to believe that NASL had not undergone a "liquidation" as announced but only a "reorganization," and that Mr. Richolson's preference-eligible retention rights had been honored. As a result, plaintiff, feeling he had been misled and misinformed by the Government, turned for assistance to Congressman Lester Wolff. After corresponding with the CSC New York regional office, Congressman Wolff informed plaintiff by letter dated July 27, 1971, that CSC admitted the RIF had indeed been carried out as a part of a "reorganization," not a "liquidation," of NASL. This was plaintiff's first official notice in writing of NASL's misrepresentation.

On August 12, 1971, plaintiff appealed his RIF to the CSC New York regional office, claiming he had not been accorded his full rights as a preference eligible. By letter dated August 17, 1971, the regional office declined to accept the appeal on the ground that it was not timely filed. This decision was affirmed by the CSC Board of Appeals and Review on November 19, 1971.

Plaintiff here claims his removal was procedurally improper and seeks back pay for the salary he would have earned from July 31, 1970, his date of termination. He further seeks reinstatement to a position similar to the one he then held. The case is before us on the parties' cross motions for summary judgment.

It is well established that retention of employees in a lower retention subgroup than that of a preference eligible whose employment has been terminated constitutes a violation of the VPA. 5 U.S.C. § 3502(b); Newman v. United States, 143 Ct.Cl. 784, 798 (1958). Under such circumstances, this court had held the aggrieved preference eligible is entitled to back salary from the date of wrongful termination. *See, e. g.,* Baxter v. United States, 136 F.Supp. 748, 749, 129 Ct.Cl. 254, 257 (1954), cert. denied, 350 U.S. 936, 76 S.Ct. 308, 100 L.Ed. 817 (1956). It is clear that such a plaintiff may today be additionally entitled to reinstatement by this court. Act of Aug. 29, 1972, 28 U.S.C. § 1491 (Supp. II, 1972).

Before approaching the court with a claim under the VPA, however, a preference eligible must exhaust the CSC administrative remedies established under the authority of that Act. Martilla v. United States, 118 Ct.Cl. 177, 180 (1950). Defendant in the present case contends that plaintiff fails to meet this requirement since he did not appeal his RIF to the CSC regional office within 15 days after the effective date of such termination. Plaintiff counters that the assertion made in NASL's general notice of RIF—that the laboratory was being "liquidated" and that no preference-eligible displacement rights would apply—constitutes a misrepresentation by defendant and thus brings his case within

---

1. The effective RIF date, as amended, was July 31, 1970.

the exception to the regulatory time limit for administrative appeal:

> The Commission may extend the time limit in paragraph (a) of this section when the appellant shows that he was not notified of the time limit and was not otherwise aware of it, or that he was prevented by circumstances beyond his control from appealing within the time limit.

5 C.F.R. § 351.901(b) (1970).

This court has held the exhaustion requirement is not absolute and has exercised its discretion to entertain cases where administrative remedies have been excusably bypassed because "unusual circumstances" prevail. Piccone v. United States, 407 F.2d 866, 869, 186 Ct.Cl. 752, 759 (1969); Ainsworth v. United States, 180 Ct.Cl. 166, 172 (1967); Morelli v. United States, 161 Ct.Cl. 44, 45 (1963). One instance in which such circumstances are found to exist is when the preference- eligible's government employer withholds information concerning plaintiff's right to appeal an adverse administrative action or affirmatively misrepresents his procedural right. *See* Ainsworth v. United States, *supra* at 172 of 180 Ct.Cl.; Newman v. United States, *supra* at 799 of 143 Ct.Cl.

Defendant contends that plaintiff's situation is not covered by this line of reasoning since plaintiff was expressly advised of his right to appeal by his specific notice of RIF. Any misrepresentative effect which the general notice of RIF of October 27, 1969 might have had, defendant urges, was overcome by the specific notice of the following June, and plaintiff's failure to appeal administratively within the requisite time frame is consequently fatal to his suit here. We disagree.

Having misrepresented by written notice the factors material to plaintiff's preference-eligible rights, it became incumbent upon defendant to rectify such misrepresentation in similar written form. This defendant failed to do. Instead, defendant continued to represent to plaintiff, even after the issuance of the specific notice of RIF, that NASL had been "disestablished," rather than "reorganized" (as in its notice of July 1, 1970 extending plaintiff temporary retention on government payroll for a period equal to his accumulated sick leave).

Plaintiff reasonably relied on the administrative misrepresentation that NASL had been "liquidated" and, consequently, that plaintiff's VPA rights were lost to him. He acted with adequate promptness to perfect his appeal upon learning that the agency had instead been "reorganized" and VPA rights might still be available to him. Under such "unusual circumstances," he cannot be kept out of court for failure to exhaust administrative remedies. Ainsworth v. United States, *supra*.

Defendant attempts to bolster the reasonableness of the CSC refusal to entertain plaintiff's case by arguing that plaintiff may not await the outcome of a fellow employee's appeal before pursuing his own administrative remedies. However, our decision to this effect in McDougall v. United States, 149 F.Supp. 651, 138 Ct.Cl. 90 (1957), is distinguishable in that here no serious argument is advanced that plaintiff was aware of the Richolson appeal prior to its resolution and awaited the outcome of that case before moving to protect his own interests.

Defendant further alleges that plaintiff visited the NASL facility 26 times in the year following his RIF, and that this should have put him on notice earlier than July 1971 that the facility had not been "liquidated." This assertion is speculative since it is to be assumed that any disbanded facility would be phased out over a period of time, rather than all at once. Certainly, it would impose too heavy a burden on plaintiff to ascertain his own rights under the VPA, defendant having misled plaintiff by erroneous official notice and having failed to rectify such misrepresentation. *See* Newman v. United States, *supra* at 798 of 143 Ct.Cl.

■ Having determined that plaintiff's failure to exhaust his administrative remedies in this instance is not fatal to his suit for judicial relief, the court is now faced with the option of retaining the case or remanding it to the administrative agency for consideration of the merits. Manzi v. United States, 198 Ct.Cl. 489, 495 (1972); 28 U.S.C. § 1491 (Supp. II, 1972). We believe it "most expeditious and appropriate" to return the record to the CSC to adjudicate plaintiff's retention rights; to determine whether he has been ready, willing, and able to perform his duties since the date of his separation; and for further appropriate proceedings not inconsistent with this decision.

Accordingly, defendant's motion and plaintiff's cross motion for summary judgment are denied, and the case is herewith remanded to the CSC to consider plaintiff's claim as set forth above. The attorney of record for the plaintiff is designated to advise the court of the status of the remand proceedings pursuant to paragraph 9(a) of the court's General Order No. 3 of 1972.

DAVIS, Judge (dissenting):

The case does not, in my view, fall within the class in which the employee's failure to file a timely appeal must be excused because the employing agency misinformed him, affirmatively or by silence, as to his appeal or procedural rights. This plaintiff was expressly told that, if he believed the reduction-in-force regulations to have been applied incorrectly in his case, "you can appeal this action to the Civil Service Commission." He did not exercise this right until more than a year later. The only justification offered for the extended delay ·is that it took that long for him to realize that his agency had not undergone a "liquidation" but a "reorganization." Another employee (Richolson) suspected this long before plaintiff, and there is no showing, or reason to believe, that there was anything in the objective facts—aside from what the agency wrote in the notices to plaintiff—that prevented plaintiff from earlier discovering that he had a putative claim which should be pursued. In this situation, I cannot say that the Commission acted arbitrarily, or abused its discretion, when it held that the belated appeal was untimely and that plaintiff was not prevented by circumstances beyond his control from filing a proper appeal.

This conclusion is not affected, for me, by the agency's indication in the notifications that the adverse action resulted from a liquidation. We can assume now that that was incorrect. But an employee served with notice of an adverse action need not and should not adopt his employer's characterization of the action, or the employer's reasons for it. An appeal is provided precisely so that the employee can challenge and test the employer's statements, showing them (if he can) to be wrong. Each year, in scores of personnel cases, employees reject management's observations (and determinations) by carrying through on their right of appeal—and they prevail in substantial numbers. It has never been suggested that the timeliness of the appeal depends on its outcome, or that, ·in those instances in which the employees win, the appeals are necessarily timely, no matter how late filed, because the appellate determination shows in itself that the agency's notification of its position was necessarily incorrect and, accordingly, a misrepresentation.

I know of no good reason why plaintiff cannot or should not be held to this traditional standard. He was specifically told he could appeal "if you believe the reduction-in-force regulations have not been applied correctly in your case," and with that direct invitation he was negligent to acquiesce supinely in the agency's views. Where, as here, the employee is clearly informed of his appeal rights, he has no right to accept the employer's statements uncritically, or to wait until he finds out that some other employee has disputed and disproved

them. *Cf.* McDougall v. United States, 149 F.Supp. 651, 138 Ct.Cl. 90 (1957). I would therefore grant the Government's motion for summary judgment and dismiss the petition.[1]

---

1. I agree with the court, however, that if the appeal is deemed timely the proper course is to remand to the Civil Service Commission for consideration of the merits of the reduction-in-force.