**Albert I. YUNI, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

**Appeal No. 85–2533.**

United States Court of Appeals,
Federal Circuit.

Feb. 19, 1986.

---

Albert I. Yuni, argued pro se.

Rita Arendal, of the Merit Systems Protection Bd., Washington, D.C., argued for respondent.

Before RICH, DAVIS, and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Albert I. Yuni appeals the decision of the Merit Systems Protection Board (MSPB or Board), *Lewis v. Small Business Administration*, 27 M.S.P.R. 331 (1985),[1] dismissing his appeal as untimely filed. We reverse the decision and remand the case for further proceedings.

## Background

Mr. Yuni was employed in the Small Business Administration's (SBA or agency) Office of Minority Small Business and Capital Ownership Development (MSB/COD) as a Procurement Analyst, GM–1102–14. During 1982 and 1983 the Office of Personnel Management (OPM) audited several positions in MSB/COD to determine whether employees in those positions were graded at levels appropriate to the duties performed and the management or supervisory responsibilities involved. Pertinent details of the audit are reported in *Carter v. Small Business Administration*, 23 M.S.P.R. 309 (1984), discussed *infra*.

OPM determined that the position descriptions did not accurately describe the duties being performed, and provided new descriptions and classifications for the positions. In several instances, including that of Mr. Yuni, the new classifications were lower in grade. In late July or early August of 1983 the SBA conducted a meeting for employees affected by the OPM audits, and advised the attendees[2] that their positions would be downgraded and that their recourse would be by appeal to OPM.

---

1. The Board had consolidated Mr. Yuni's appeal with the appeals of two of his coworkers, Rodney A. Lewis and William T. Powers. Mr. Yuni appeals separately to this court.

2. Mr. Yuni argued before this court that he was on sick leave due to open heart surgery during the period between July 18, 1983 and September

4, 1983. The government states that this is a new argument; however, it is not critical to our disposition of his appeal. It is the agency's position at this meeting, consistent with its overall course of conduct in failing to inform Mr. Yuni and his co-workers of their correct appeal rights, that is relevant.

On August 26, 1983 Carolyn J. Smith, Director of the SBA Office of Personnel Services, notified Mr. Yuni by letter that his position had been downgraded from Procurement Analyst, GM–1102–14, to Procurement Analyst, GS–1102–13, effective September 4, 1983. This letter stated that he could discuss the action taken with the SBA Office of Personnel Services, and contained the following notice concerning Mr. Yuni's appeal rights:

> You may appeal the classification decision to the U.S. Office of Personnel Management in accordance with Federal Personnel Manual Letter 511–9.

No mention was made of any right to appeal the agency action to the Board.

On September 23, 1983, Mr. Yuni requested review of the classification decision by administrative grievance letter to the SBA Office of Personnel Services. In support of his contention that the agency action was not *bona fide*, Mr. Yuni alleged that his downgrading was occasioned not by classification errors but by the loss of duties previously performed or projected due to failure on management's part to assign all the duties shown in the description of his position. Mr. Yuni wrote the agency:

> Since management had detailed me numerous times to various different duties, I did not perform all the duties as written in my position description.... [M]anagement has the right to assign personnel as they see fit, but the persons involved should not be demoted and penalized for carrying out duties ordered by their supervisors.

On September 26, 1983 nine of Mr. Yuni's coworkers who had been reclassified and reduced in grade filed appeals with the MSPB. These employees contended that their positions had been reduced in grade because of changes in duties, and thus they were entitled to, but did not receive, the protection of reduction-in-force (RIF) proce-

dures. On December 22, 1983 the presiding official dismissed these appeals, holding that the correction of classification errors is not subject to the Board's appellate jurisdiction. *See generally Carter v. Small Business Administration,* 23 M.S. P.R. 309 (1984).[3]

On February 3, 1984 the Director of the SBA Office of Personnel Services replied to Mr. Yuni's letter of September 23, 1983, stating that based on a "careful study" of Mr. Yuni's duties and responsibilities "it is our decision that your current position is properly classified as General Business and Industry Specialist, GS–1101–13." After several pages of detailed reasons for this second reclassification, which was different from the first, the notice concluded:

> Should you disagree with this decision, you may appeal the decision to the Office of Personnel Management, Classification and Appeals Branch in accordance with Federal Personnel Manual Letter 511–9.... There are no time limits for which you must appeal this decision. Should you wish to appeal, it is suggested that you appeal promptly.

Again, there was no mention of any right to appeal the action to the MSPB. It was expressly stated that there was no deadline.

On September 27, 1984, the Board reversed the decision of the presiding official in *Carter.* The Board noted that "the protections afforded by RIF procedures are a substantive, not a procedural, right of employees." *Carter,* 23 M.S.P.R. at 312, n. 2. The Board held that the *Carter* group of appellants had made a *prima facie* showing that they had been "stripped of certain of their once performed, or projected, duties due to either the gradual erosion of duties, the failure on management's part to assign duties contained in the position descriptions, or the failure of the employee to perform the duties of the positions at the

---

**3.** These nine appeals were consolidated by order of the Washington D.C. Regional Board Office on November 3, 1983. The appeals of three employees were dismissed by the Board for lack of jurisdiction as their appeals were covered by an exclusive negotiated grievance procedure. *Baird v. Small Business Administration,* 22 M.S. P.R. 649 (1984). Five of the six remaining appellants subsequently petitioned the Board for review.

designated level", and that this showing had not been rebutted by the agency. *Id.* at 312. The Board overruled the presiding official, and ordered the agency to cancel the *Carter* appellants' reductions in grade as they had not been effected through the use of RIF procedures. The agency complied with this order on October 17, 1984.

Mr. Yuni states that he learned of the *Carter* decision on October 3, 1984, when the decision was publicized within the agency. In his affidavit before the Board, Mr. Yuni averred that on or about October 19, 1984 the Acting Associate Administrator of MSB/COD, Carlos Suarez, held a meeting on the subject, and that Mr. Yuni

> asked Mr. Suarez what would be done about those of us caught in the downgrade. Mr. Suarez responded that we could not be reinstated to our former positions or grades; that while SBA recognized the "equity" of the situation, SBA did not intend to do anything about it. Mr. Suarez concluded by stating that "as you know the agency is trying very hard not to have a RIF."

Mr. Yuni filed an appeal with the MSPB on October 23, 1984. The Board ordered Mr. Yuni to show that good cause existed for a waiver of his failure to appeal within the prescribed period, which the Board stated was measured from the first reclassification decision. Both Mr. Yuni and the SBA briefed the issue and submitted affidavit evidence on the issue of timeliness.

The presiding official on December 21, 1984 dismissed Mr. Yuni's appeal as untimely filed. He found that a preponderance of the evidence established that appellants Lewis, Powers, and Yuni were aware of their co-workers' appeal in *Carter* and the basis being argued therein at the time the *Carter* appeal was filed. The presiding official held that Lewis, Powers, and Yuni had an obligation of due diligence to pursue their appeals to the Board, and that their failure to recognize the merits of their case until similarly situated employees won their appeals did not constitute good cause for a late filing. The presiding official also found that the agency would

be prejudiced by the delay. The Board affirmed the decision of the presiding official, "[b]ecause appellants have not shown that they petitioned promptly after they became aware of a basis for appeal rights, they made the agency aware that they considered their downgrades an appealable action, or the agency affirmatively misrepresented their appeal rights". *Lewis,* 27 M.S.P.R. at 333.

### Analysis

### I.

Once more we seek to apply the wisdom expressed by the MSPB in *Alonzo v. Department of the Air Force,* 4 MSPB 262, 4 M.S.P.R. 180, 183–84 (1980): " 'good cause' is an elastic concept ... [which] entitles the employee to the application of the broad equitable principles of justice and good conscience." In *Ceja v. United States,* 710 F.2d 812, 814 (Fed.Cir.1983), this court quoted *Alonzo* with approval to the effect that any doubt as to whether good cause has been shown should be resolved in favor of an appellant, that an appellant need not show impossibility but only that the delay was excusable in light of the surrounding circumstances where ordinary prudence had been exercised, and that a reasonable excuse should be accepted by the presiding official absent proof of substantial prejudice to the agency. Pursuant to 5 C.F.R. § 1201.12, "[a] presiding official may waive a Board regulation in an individual case for good cause shown if application of the regulation is not required by statute."

The presiding official specifically found that Mr. Yuni was not advised of his right to appeal to the Board, as required by 5 C.F.R. § 1201.21:

> § 1201.21 Notice of appeal rights.
>
> When an agency issues a decision notice to an employee on a matter appealable to the Board the agency shall provide:
>
> (a) Notice of the time limits for appealing to the Board and the address of the appropriate Board office for filing the appeal;

(b) A copy of the Board's regulations;

(c) A copy of the appeal form....

It is established that "[t]he critical element ... is that the employee acted promptly and within the allowable time limits once he was aware of the basis of his claim." *Gordy v. Merit Systems Protection Board*, 736 F.2d 1505, 1508 (Fed.Cir.1984); *see also McCormack v. United States*, 204 Ct.Cl. 371, 380–81 (1974); *Shubinsky v. United States*, 488 F.2d 1003, 1006, 203 Ct.Cl. 199, 204 (1973).

The Board nevertheless held that Mr. Yuni could be charged with notice of the appeal rights and constraints attendant a reduction in force. Pursuant to 5 C.F.R. § 351.901, "[a]n employee who has been ... demoted by a reduction-in-force action may appeal to the Merit Systems Protection Board." The RIF regulations provide that an employee who is released from his competitive level "is entitled to a written notice at least 30 full days before the effective date of release". 5 C.F.R. § 351.-801(a). This notice must state specifically the action to be taken and the employee's right to appeal to the Board. 5 C.F.R. § 351.803(a).

■ We first consider whether a reasonable person receiving the SBA's August 26, 1983 letter to Mr. Yuni is chargeable with notice that this was a RIF action appealable to the Board. The letter stated that Mr. Yuni's position was being reclassified and that "you may appeal" the agency's classification decision to OPM. Classification appeals do not lie within the appellate jurisdiction of the Board. The notice makes no mention of a RIF; Mr. Yuni received eight days' written notice rather than the RIF-required thirty days; he received none of the information required by 5 C.F.R. § 1201.21.

The Board held that good cause could not be established because the agency did not affirmatively misrepresent Mr. Yuni's right to appeal to the Board. The Board apparently was not swayed by the undisputed evidence that the agency, in two separate letters on the two reclassifications, stated

that Mr. Yuni's appeal was to OPM. A RIF is not appealable to OPM. This court has held that "there is no requirement that an employee be intentionally deceived about his employment options, it being sufficient that 'the employee shows that a reasonable person would have been misled by the agency's statements.'" *Covington v. Department of Health and Human Services*, 750 F.2d 937, 942 (Fed.Cir.1984), *quoting Scharf v. Department of the Air Force*, 710 F.2d 1572, 1575 (Fed.Cir.1983). As in *Covington*, the agency here was affirmatively responsible for Mr. Yuni's lack of an informed choice. By informing Mr. Yuni that he had the right to appeal to OPM, and by specifically informing him that there was no time limit, the agency effectively limited Mr. Yuni's conduct. "A decision made 'with blinders on', based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process." *Covington*, 750 F.2d at 943.

We conclude that the agency's actions and statements could have misled a reasonable person. Whether or not the agency, in its statement "trying very hard not to have a RIF'", *see supra*, intentionally misled Mr. Yuni, it was not unreasonable for Mr. Yuni to rely on the agency's representation that an administrative appeal to OPM was the appropriate route of action. *Cf. Scharf*, 710 F.2d at 1575 (reasonable for petitioner to rely on the erroneous advice of his retirement counselor).

Mr. Yuni was further prejudiced by the agency's refusal to correct this error on receipt of the Board's decision adverse to the SBA. Mr. Yuni had informed the agency in his September 23, 1983 letter that he believed that his downgrading was due to a loss of duties, yet the agency never counselled Mr. Yuni that such a position could only be maintained before the Board. Rather, the agency had responded by justifying the reduction in grade, and repeated that appeal was to OPM and that "[t]here are no time limits for which you must appeal this decision." The agency thus further lulled petitioner into the erroneous

belief that he could not be harmed by any additional delay in the vindication of his rights.

We thus hold unsupported by substantial evidence, as to Mr. Yuni, the Board's finding that "appellants have not contended that they informed the agency that they considered this an appealable action." [4] *Lewis*, 27 M.S.P.R. at 333. As the Court of Claims said in *McCormack*, 204 Ct.Cl. at 380:

> We have said that the Government is not clairvoyant and may not be required to read the plaintiff's mind. However, the Government cannot, after receiving a letter wherein the cast of plaintiff's mind is made abundantly clear, do nothing to inform the plaintiff of the proper appeal procedures and then defend on the grounds of plaintiff's failure to make a timely appeal.... After the plaintiff made it sufficiently clear to the Government that he deemed his resignation to be other than voluntary, the Government was required to state in detail the various procedures available to the plaintiff to contest the allegedly adverse action and the remedies available. The Government cannot claim to be in the dark when plaintiff's letters constitute something less than a legal brief to the point. So long as the Government is on notice that plaintiff views himself the subject of an adverse action the Government can no longer claim surprise with respect to an allegation of involuntariness.

Mr. Yuni's letter put the agency on notice that he viewed his reduction in grade as an adverse action. While the agency could challenge before the Board Mr. Yuni's assertion on its merits, the agency is not entitled to withhold from Mr. Yuni all the information normally given to a party who believes he has been the subject of an improper RIF. "Where the rights of indi-

viduals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974).

## II.

■ The agency maintains that its failure to notify Mr. Yuni of his right to appeal the action to the MSPB is excused because several of his co-workers filed timely appeals with the Board. The agency relies on three "facts" as found by the presiding official: (1) Messrs. Yuni, Lewis, and Power were provided the same (erroneous) notice as the nine persons who joined together in the *Carter* appeal; (2) they all occupied office space in close physical proximity to each other; and (3) one appellant had consulted the same counsel at the same time as the *Carter* employees. *Lewis*, 27 M.S.P.R. at 332. The Board upheld the presiding official's finding that "appellants should have been aware of a possible basis for Board jurisdiction in September 1983." *Id.* at 333. Our review of the record convinces us that this finding is not supported by substantial evidence with respect to Mr. Yuni. Although the Board had consolidated these appeals, it is not authorized also to consolidate the evidence and to apply its full weight against each appellant.

In its first "fact", the Board would penalize Mr. Yuni because others of the affected employees did not follow the agency's erroneous advice. This is a version of estoppel for which we have been provided no authority. As discussed *supra*, the test is whether a reasonable person, in Mr. Yuni's position, would have been reasonably put on notice of the time-limited right to appeal the action to the Board. We have already concluded that a reasonable person would not be so aware.

As for the second "fact", the record is devoid of evidence that Mr. Yuni shared

---

**4.** We assume that by the term "appealable" the Board is referring to an adverse action of the type that, if the agency accepted an employee's characterization of the events, the *agency* would recognize that review could be had before the Board. *McCormack v. United States*, 204 Ct.Cl. 371 (1974), cited by the Board, imposes no re-

quirement that the *employee* be aware that the agency's action is appealable, only that he communicate his belief that he is the subject of an adverse action, triggering a duty on the part of the agency to inform the employee of applicable appeal rights.

office space with the nine appellants in *Carter*. The only reference in the record is this sentence in the agency's brief before the presiding official:

> Additionally, the nine Appellants who filed timely appeals have from the time of their appeals through the present time occupied office space in close physical proximity to the offices of the three subject Appellants and, all employees affected were in the same functional program office.

Attorney argument does not of itself constitute substantial evidence. The record shows that many of Mr. Yuni's co-workers worked in different branches of the Office of Business Development or in a different office altogether.[5]

Similarly, the third "fact" is not pertinent to Mr. Yuni. It was Mr. Powers, not Mr. Yuni, who consulted the law firm that represented the *Carter* appellants. Whatever knowledge can be charged against Mr. Powers under such circumstances cannot fairly be attributed to Mr. Yuni.

Viewing the agency's entire evidentiary support for its position that Mr. Yuni is estopped because he knew of his appeal rights but refrained from exercising them, we conclude that this position is not supported by substantial evidence. The presiding official placed weight on the fact that Mr. Yuni did not deny that he was aware of the *Carter* group's appeal to the Board. Assuming *arguendo* that Mr. Yuni was aware of this appeal, at least at some time during its pendency, we conclude that this does not constitute substantial evidence in the context that Mr. Yuni was expressly misinformed, twice in letters from the agency, and in meetings discussed in the record, that his appeal route was to OPM and was not time barred.

The balance of fairness does not lie with the agency, that now argues in substance that Mr. Yuni must be charged with the knowledge that the agency was misinform-

ing him. (We note that the agency apparently still insists that its advice was correct). In light of the agency's representations Mr. Yuni reasonably could have expected, as he argues, that an appeal to the Board would have been a fruitless, costly effort on his part.

In *Covington*, we declined to hold that an appellant's knowledge of a suit that had been filed excused the material misrepresentations which had been made by the agency to the employee:

> The agency's erroneous representations are not excused by the fact that the CSA union challenged them in court prior to the date that the agency was abolished. It is not material whether Covington had knowledge of that suit prior to his decision to accept discontinued service retirement. The mere initiation of litigation is not such evidence of eventual success as to have required Covington to stake his sustenance on its outcome.

750 F.2d at 942. Similarly, Mr. Yuni was entitled to rely on the statements of the agency. He is not required to assume that his agency had made critical misrepresentations, fatal to his cause. Rather, Mr. Yuni pursued the administrative remedy favored by his agency. Mr. Yuni did not wait to see what happened to his co-workers; he independently pursued his rights by filing a grievance with the agency.

In view of his filing a grievance in his September 23, 1983 letter and the agency's response of February 3, 1984, we have no explanation for the following contention in the agency's brief before the presiding official:

> This is not a case where an appellant pursued an appeal to OPM, or filed a grievance, or took any other recourse before appealing to MSPB upon learning of an agency downgrade. Instead, these appellants did nothing for a year while waiting to see if their colleagues' timely-

---

**5.** We have not considered the new evidence contained in Mr. Yuni's supplemental briefs to this court concerning his contacts with his co-workers during this period, because this evidence was not presented below. *Lizut v. Department of the Army*, 717 F.2d 1391 (Fed.Cir. 1983).

**388**

filed appeals would be sustained on the merits.

This apparently casual commingling of facts pertinent to Mr. Yuni with those that may have been applied to Messrs. Lewis and Powers was a disservice to the Board as well as to these appellants. By the time Mr. Yuni was subjected to his second reclassification as a result of his grievance, Carter et al. had received their adverse initial decision from the MSPB, which stated that the MSPB did not have jurisdiction over this class of appeals. This matched the agency's continuing advice to Mr. Yuni. Although the government makes much of the fact that Mr. Yuni did not earlier appeal to the MSPB, or somehow join the Carter group, it strains both logic and justice to impose this hindsight on Mr. Yuni.

*Gordy v. Merit Systems Protection Board*, 736 F.2d 1505 (Fed.Cir.1984), cited by the government, is distinguishable from the present case. The petitioner in *Gordy* was represented by an attorney before the agency and was on record as acknowledging that his reclassification was a reduction in force over which the Board had jurisdiction, many months before he filed his appeal with the Board. Mr. Gordy, having this knowledge, was charged with its consequences. Mr. Yuni, on the other hand, never informed the agency that he was aware that his reduction in grade could be appealed to the Board. He relied on the agency's representations that he should pursue his grievance administratively; we hold that Mr. Yuni acted reasonably in so doing. Mr. Yuni was not represented by counsel until after he had notice of the *Carter* decision, when for the first time he had actual notice of a basis for a claim which could be brought before the Board.

■ The procedures governing federal employment, by statute and regulation, represent a careful balance of employer and employee needs. The benefits of these procedures are not rewards for the select few with the resources to penetrate agency errors. The agency failed to inform Mr. Yuni of his right to appeal to the Board, failed to correct its error, and despite the

*Carter* decision continues to seek to deny equal treatment to Mr. Yuni. Mr. Yuni filed his appeal within twenty days after learning of the *Carter* decision. In the circumstances of this case, we hold that Mr. Yuni met the requirement of "[d]ue diligence on the employee's part once the employee learns of his adverse protection rights". *Casey v. Merit Systems Protection Board*, 748 F.2d 685, 686 (Fed.Cir. 1984). Therefore, the Board abused its discretion in failing to waive, for good cause shown, the twenty day time limit for filing the appeal. 5 C.F.R. § 1201.22. The decision is reversed and the case is remanded for further proceedings.

REVERSED AND REMANDED.