**Daniel R. KRIZMAN, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent,**

and

**United States Postal Service, Intervenor.**

No. 95–3288.

United States Court of Appeals, Federal Circuit.

Feb. 20, 1996.

Stuart A. Abramson, Sea Cliff, New Jersey, argued in support of petitioner. C.B. Weiser, Germantown, Tennessee, was on the brief for petitioner.

Eric D. Flores, Office of General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. With him on the brief were Mary L. Jennings, Acting General Counsel and Martha B. Schneider, Assistant General Counsel.

Luis M. Matos, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, was on the brief for intervenor. With him on the brief were Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director. Of counsel were R. Andrew German, Chief Counsel and Bruce M. Reimer, Appellate Division, United States Postal Service, Washington, DC.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Petitioner Daniel R. Krizman seeks review of a decision of the Merit Systems Protection Board dismissing his appeal on the ground that it was untimely filed. *Krizman v. United States Postal Serv.*, 66 M.S.P.R. 233 (1995). We conclude that the Board did not abuse its discretion in finding that Krizman failed to establish good cause to excuse his untimely filing, and we therefore affirm.

. I

This case stems from a restructuring of the United States Postal Service implemented in 1992 and 1993. In an attempt to reduce layers of management and redundant positions, the Postmaster General in 1992 proposed to restructure the Postal Service in a manner that would eliminate approximately 30,000 jobs. The Postmaster General advised Postal Service employees that the method by which the restructuring would be effected was uncertain, but that the steps to be taken could include "inducements to those eligible to retire, early-out scenarios, sever-

ance pay, reductions in force and layoffs." He added that it was "likely that some of these options will be chosen."

Before demoting or laying off any employees, the Postal Service offered a special early retirement incentive program to its senior managers and administrators. Under the incentive program, those retiring before October 3, 1992 (later extended to November 20), would receive a lump-sum bonus equal to six months' salary. Krizman, a Postal Service employee who was eligible for the program, accepted the incentive offer, retired on November 20, 1992, and received the bonus.

The early retirement program resulted in a significant reduction in the number of employees who would be affected by the restructuring, but it did not obviate the need to take other steps to reduce and reallocate the workforce. The Postal Service ultimately assigned approximately 48,000 employees to new positions within the restructured agency. Most of those employees were assigned to higher-graded positions, and some were assigned to positions of the same grade. The remainder, about 15 percent, were assigned to positions carrying lower grades. Those employees who were assigned to lower-graded positions were nonetheless guaranteed indefinite retention of the grades and pay they had previously enjoyed.

The Office of Personnel Management (OPM) has promulgated regulations governing agency reductions in force (RIFs). *See* 5 C.F.R. part 351. The regulations define a RIF action to include the demotion of an employee during the course of an agency reorganization. 5 C.F.R. § 351.201(a)(2). Pursuant to the RIF regulations, an employee in the competitive civil service who is demoted during a reorganization enjoys certain "RIF rights," including the right to appeal to the Merit Systems Protection Board to challenge the manner in which the agency has conducted the RIF action. *See* 5 C.F.R. §§ 351.401–.807, 351.901.

■ Ordinarily, employees of the Postal Service do not enjoy the protections of the RIF regulations. *See Marcoux v. United States Postal Service*, 63 M.S.P.R. 373 (1994). By statute, however, preference-eligible employees, *i.e.*, certain veterans and relatives of veterans, *see* 5 U.S.C. § 2108, enjoy special rights under the RIF regulations, including the right to appeal RIF actions to the Board. 39 U.S.C. § 1005(a)(2); 5 U.S.C. § 3501(b); 5 C.F.R. §§ 351.501, 351.901. Krizman, a veteran, was a preference-eligible employee and thus was entitled to the rights conferred by the OPM reduction-in-force regulations upon being subjected to a RIF action.

Although acknowledging that preference-eligible employees in the Postal Service have RIF rights, the Postal Service took the position during the restructuring that if employees assigned to lower-graded positions were allowed to retain their prior grades and pay, the reassignments would not be considered "demotions," *see* 5 C.F.R. § 210.102(b)(4), and therefore would not constitute RIF actions to which RIF rights would apply, *see* 5 C.F.R. § 351.201(a)(2). Thus, none of the reassigned employees were accorded the rights they would have enjoyed under the regulations in the event of a RIF.

Some preference-eligible employees who were assigned to lower-graded positions challenged their reassignments, contending that assigning an employee to a lower-graded position during a reorganization, even when the employee is guaranteed indefinite retention of grade and pay, constitutes a "demotion" for purposes of the RIF regulations. In July 1993, the Merit Systems Protection Board agreed with the employees, holding that the assignment of preference-eligible employees to lower-graded positions constituted demotions, and that preference-eligible employees who were demoted in that fashion were entitled to the rights provided by the RIF regulations, including the right to appeal their demotions to the Board. *See Brown v. United States Postal Serv.*, 58 M.S.P.R. 345 (1993).

Following the *Brown* decision, a number of former Postal Service employees who had retired pursuant to the early retirement incentive program filed appeals with the Merit Systems Protection Board seeking reinstatement. Krizman was one of those who filed such an appeal. His appeal was filed on September 10, 1993, approximately 10 months after his retirement.

In his appeal, Krizman alleged that his retirement was involuntary, and thus in effect constituted a removal action, because he would not have retired if he had known that his status as a preference-eligible employee would give him enhanced rights in the assignment process. He therefore sought to have his retirement set aside, and he asked to be awarded back pay and accorded "RIF rights" in determining his future employment status with the agency.

The administrative judge noted, but did not decide, the question whether Krizman's appeal was timely. Instead, the administrative judge found that the Board lacked jurisdiction over Krizman's appeal because Krizman had failed to establish that his retirement was involuntary. Following a hearing, the administrative judge found that Krizman had retired because of his wife's illness, not because of "any lack of information about positions or concern about obtaining a job in the new organization." The administrative judge further found that the agency did not "misrepresent[ ] or deceive[ ]" Krizman "about any facts material to his decision to retire." By the time Krizman retired, the administrative judge noted, "it was common knowledge ... that there would be no layoffs and everyone would receive indefinite saved grade and pay." Krizman therefore "knew that he would have a job should he decide not to retire," and he "also knew that he had to retire by November 20, if he wanted to receive the cash bonus."

The full Board agreed with the administrative judge that Krizman's appeal should be dismissed, but it based its decision on a different ground. Rather than addressing the merits of Krizman's claim that his retirement was involuntary, the Board ruled that his appeal was untimely and that he had not shown good cause to excuse the untimeliness of the appeal.

In finding an absence of good cause, the Board first held that Krizman was not entitled to notice of his right to appeal to the Board at the time of his retirement. When an employee elects to retire, the Board explained, the agency is not required to give the employee notice of his right to appeal to

the Board unless the employee makes it known to his agency that he regards his retirement as involuntary. Because there was no evidence that Krizman "took any steps ... to put the agency on notice of a belief that he had retired involuntarily," the Board held that the agency was not required to advise Krizman of the right to appeal an involuntary retirement.

The Board further noted that there was no evidence in Krizman's case or any other similar case that had come before the Board to suggest that the Postal Service "knew that its action could only have been a RIF." Accordingly, the Board concluded, the agency's "preliminary information to [Krizman] before his retirement, that did not include notification of any RIF appeal rights, has not been shown to have been in bad faith, contrary to the clear facts, or aimed at misleading him."

The Board acknowledged that for purposes of determining whether an agency misrepresentation has rendered a retirement or resignation involuntary, "the fact that the agency's misrepresentation may have been innocently made is of no consequence." *See Covington v. Department of Health & Human Servs.*, 750 F.2d 937, 944 (Fed.Cir. 1984). With respect to the timeliness determination, however, the Board concluded that the agency's good faith was an important factor, particularly because no RIF action was taken against Krizman before he retired. Because Krizman failed either to put the agency on notice that he regarded his retirement as involuntary, or to exercise diligence in discovering and pursuing his right of appeal, the Board held that he had failed to satisfy his burden of showing good cause for filing his appeal long after the period within which a timely appeal should have been filed.

## II

### A

Under Board regulations that were in effect at the time, Krizman was required to file his appeal within 20 days of his retirement. 5 C.F.R. § 1201.22(b) (1992) (the period for an appeal has since been increased to 30 days). Because Krizman's appeal was filed more than nine months after his retire-

ment, his appeal was untimely. The regulations provide that an untimely appeal to the Board will be dismissed unless "a good reason for the delay is shown." 5 C.F.R. § 1201.22(c). The appellant bears the burden of establishing good cause, *Phillips v. United States Postal Serv.*, 695 F.2d 1389, 1391 (Fed.Cir.1982), and this court will overturn the Board's finding of no good cause only if the petitioner establishes that the Board's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Mendoza v. Merit Sys. Protection Bd.*, 966 F.2d 650, 653 (Fed.Cir.1992) (in banc).

### B

■ Krizman argues that the Postal Service misled him by failing to tell him that the Postal Service reorganization "was a RIF action." He asserts that if he had known at the time he retired that the reorganization was a RIF action, he would not have elected to retire, but would have "awaited a RIF assignment," to which he would have been entitled as a preference-eligible employee.

Krizman's argument is based on a misunderstanding of what constitutes a RIF action and gives rise to RIF rights under the OPM regulations. The regulations make clear that the only persons who are subjected to a RIF action in the course of a reorganization are those who are released from their competitive level by separation, by demotion, or by certain furloughs or reassignments requiring displacement. 5 C.F.R. § 351.201(a)(2); *see also* 5 C.F.R. § 351.901 (right of appeal limited to employees who are separated, demoted, or furloughed). Consistent with that principle, the only aspect of the Postal Service's reorganization that the Board found to constitute a RIF action was the assignment of preference-eligible employees to lower-graded positions. *See Brown v. United States Postal Service, supra; Di Pietro v. United States Postal Serv.*, 58 M.S.P.R. 430 (1993). Reassignments to positions of the same or higher grade within the Postal Service were held not to be RIF actions appealable to the Board because they were not "demotions," and details to Postal Service "placement centers" were likewise held not to be not appeal-able RIF actions, *see Dixon v. United States Postal Serv.*, 64 M.S.P.R. 445 (1994).

Although Krizman was a preference-eligible employee, the Postal Service had no obligation to advise him of his RIF rights, because he was never subjected to an appealable RIF action—that is, he was never demoted, furloughed, or separated as a result of the restructuring. Because he was not "selected for release from a competitive level," *see* 5 C.F.R. § 351.801(a)(1), he was not entitled to notice of information regarding his status, as set out in 5 C.F.R. §§ 351.802(a)(1) through 351.802(a)(5), and he was not entitled to notice of his appeal rights, as set out in 5 C.F.R. § 351.802(a)(6) and 5 C.F.R. § 1201.21. *See Bissett v. United States Postal Serv.*, 66 M.S.P.R. 631, 636–37 (1995).

Krizman's argument is not buttressed by *Shubinsky v. United States*, 203 Ct.Cl. 199, 488 F.2d 1003 (1973), or *Yuni v. Merit Systems Protection Board*, 784 F.2d 381 (Fed. Cir.1986). In those cases, the agency took RIF actions against the employees but either mischaracterized the action taken (in *Yuni*) or erroneously advised the terminated employee that he would not be eligible to exercise his RIF rights (in *Shubinsky*). The court in each case found good cause for the affected employee's untimely filing of his appeal because of the misinformation given to the employees who had been terminated or downgraded. Those cases would be pertinent if the Postal Service had taken a RIF action against Krizman without advising him of his appeal rights. Krizman, however, retired and was never forced to undergo a demotion or other RIF action. *Shubinsky* and *Yuni* are therefore inapposite.

In his brief, Krizman argues that the Postal Service "deceived its employees by contending that its reorganization was not a RIF." The evidence that he cites in support of that claim, however, is not evidence of deceit, but establishes only: (1) that Krizman was not told that the reorganization was a RIF, (2) that Krizman was not afforded any of the rights defined by the RIF regulations, and (3) that the Postal Service planned to resort to a RIF only as a last resort.

None of that evidence buttresses Krizman's case. First, as we have noted, the reorganization as a whole was not a RIF; only those employees who were assigned to lower-graded positions as a result of the reorganization were subjected to RIF actions. Second, because Krizman was not subjected to a RIF action, he was not entitled to be afforded any rights under the RIF regulations. Third, the evidence that the Postal Service had not ruled out a RIF at the time of Krizman's retirement supports the Postal Service's contention that a RIF was still a possibility at that point. Indeed, a public statement made by the Postal Service in July 1992 referred to reductions in force as one method that might be used in the restructuring.

In support of his claim of deceit by the Postal Service, Krizman points to a newsletter published by a postal employee group—not the Postal Service—which states in its headline, "No RIF for Supervisors." Although that newsletter used the term "RIF," the evidence makes clear that it was in fact reporting an agreement between the employee group and the Postal Service that supervisory employees would not be laid off. The newsletter thus contributes nothing to Krizman's claim.

■ The Board is not required to find good cause for an untimely appeal whenever an employee claims that the agency failed to provide him with all the information he regards as pertinent to his decision whether to challenge the agency action. In *Clark v. United States Postal Service*, 989 F.2d 1164 (Fed.Cir.1993), the court addressed the question whether an agency's failure to advise an employee of his right to appeal to the Board on the issue of compliance with a "last chance" settlement agreement constituted "good cause" for the employee's untimely appeal. The court noted that the agency was not aware at the time that the employee enjoyed a limited right of appeal to the Board. Although a later decision of this court established that the employee could take such an appeal, the court in *Clark* declined to hold that the agency should have foreseen that later decision; the court therefore held that the agency's failure to apprise the employee of his appeal rights did not constitute good cause for the employee's untimely appeal. *See* 989 F.2d at 1167–68.

Following the analysis employed in *Clark*, the Board held that good cause for Krizman's untimely appeal was not established simply because the Postal Service failed to advise him that reassignments to lower-graded positions would be deemed RIF actions even for employees who were guaranteed retained pay and grade. The Board observed that, as in *Clark*, the agency had not acted in a manner contrary to the clear facts, in bad faith, or for the purpose of misleading Krizman. It therefore concluded that, under those circumstances and in light of Krizman's failure to exercise diligence to discover and protect his right of appeal, Krizman failed to show good cause for filing an appeal that was nine months out of time.

■ It is important to note that in addressing the question of what constitutes good cause for an untimely appeal under 5 C.F.R. § 1201.23(c), we are not applying a statute or court rule. Rather, we are reviewing the Board's interpretation of one of its own regulations, promulgated pursuant to statutes that give the Board "broad discretion in handling appeals and controlling its own docket by requiring that appeals be processed in accordance with regulations prescribed by the board." *Phillips v. United States Postal Serv.*, 695 F.2d at 1390–91 (citing 5 U.S.C. § 7701(a)). *See also* 5 U.S.C. § 1204(h). As the Supreme Court has frequently observed, an administrative agency's interpretation of its own regulations is entitled to great deference. In that setting, "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). *See also, e.g., Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S.Ct. 1835, 1850, 104 L.Ed.2d 351 (1989); *Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988); *Udall v. Tallman*, 380

U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965); *Sam v. United States,* 230 Ct.Cl. 596, 682 F.2d 925, 931 (1982).

The same principle applies here. In *Jones v. United States Postal Service,* 65 M.S.P.R. 306 (1994), and in subsequent cases, including this one, the Board has consistently interpreted its "good cause" regulation not to excuse an untimely appeal by a retiree in Krizman's position simply because the agency failed to advise him of all the possible consequences of not retiring.

Under the standard governing review of an agency's interpretation of its own regulations, the Board's interpretation of its "good cause" regulation must be sustained. Because the Board's interpretation of its "good cause" regulation is "a reasonable, consistently applied administrative interpretation of the regulation by the agency that promulgated it," *Ehlert v. United States,* 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971), we conclude that the Board did not abuse its discretion in the manner in which it interpreted and applied that regulation in this case. We therefore uphold the Board's dismissal of Krizman's appeal as untimely filed.

*AFFIRMED.*