95 F.3d 1166
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Robert F. O'CLERY, Petitioner,
v.
UNITED STATES POSTAL SERVICE, Respondent.
 No. 95-3507.
 United States Court of Appeals, Federal Circuit.
 Aug. 8, 1996.
 
 Before MICHEL, CLEVENGER, and BRYSON, Circuit Judges.
 DECISION
 PER CURIAM.
 
 
 1
 Robert F. O'Clery petitions for review of a decision of the Merit Systems Protection Board, Docket No. DC-0752-94-0340-I-1, dismissing his appeal of an allegedly involuntary retirement from the United States Postal Service. The Board found O'Clery's retirement was voluntary and thus dismissed the appeal for lack of jurisdiction. We affirm.
 
 BACKGROUND
 
 2
 In 1992 and 1993, the Postal Service conducted a nationwide restructuring. In order to reduce the number of employees it would need to place in the new structure, the Postal Service before making any restructuring assignments offered some employees the opportunity to take early retirement in return for a lump-sum bonus equal to six months' pay. See generally Krizman v. Merit Sys. Protection Bd., 77 F.3d 434, 435-36 (Fed.Cir.1996) (reviewing the pertinent events in the Postal Service's 1992 restructuring). O'Clery was one of those offered the early retirement option. He accepted the offer and retired on November 20, 1992.
 
 
 3
 Of those employees who did not retire, some were assigned to lower-graded positions in the new structure, although they were guaranteed indefinite retention of the grades and pay they had enjoyed in their previous positions. The Postal Service believed that by guaranteeing the incumbents no loss of grade and pay, the assignments to lower-graded positions would not constitute "demotions" and thus would not be considered reduction-in-force (RIF) actions. See Krizman, 77 F.3d at 436. In July 1993, however, the Merit Systems Protection Board ruled that those preference-eligible employees of the Postal Service who had been assigned to lower-graded positions during the restructuring had been subjected to appealable RIF actions. See Brown v. United States Postal Serv., 58 M.S.P.R. 345 (1993).
 
 
 4
 In response to Brown, many of those who had accepted the early retirement offer, including O'Clery, appealed their retirements to the Board. O'Clery filed his appeal in March 1994, arguing that he would not have retired had he known that the restructuring would be considered a RIF, since preference-eligible employees of the Postal Service enjoy certain rights in a RIF, see Krizman, 77 F.3d at 436. He asserted that his retirement was therefore involuntary.
 
 
 5
 In an initial decision, the administrative judge found O'Clery's appeal untimely, excused the delay for good cause shown, and held that his retirement was involuntary. The government petitioned the Board for review, but the Board denied the petition due to the government's untimely submission of proof that it had complied with the administrative judge's order for interim relief. However, the Board reopened the appeal on its own motion, vacated the administrative judge's initial decision, and dismissed O'Clery's appeal, holding that O'Clery had failed to establish that his retirement was involuntary.
 
 DISCUSSION
 
 6
 On appeal, O'Clery argues that misinformation from the Postal Service induced him to retire and that his retirement was therefore involuntary. He asserts that he was led to believe that preference-eligible employees would have no special rights in the upcoming restructuring, i.e., that no RIF actions would be taken. That misinformation, he contends, induced him to accept the Postal Service's early retirement offer.
 
 
 7
 In support of his argument, O'Clery cites this court's opinion in Covington v. Department of Health & Human Servs., 750 F.2d 937 (Fed.Cir.1984), for the proposition that "[a] decision made 'with blinders on,' based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process." In Covington, the agency advised Covington that he would have no right to reassignment, when in fact he would. The court held that the misinformation, which led Covington to retire, made his decision to retire involuntary. The court added that, even in the absence of misinformation, an agency's failure to provide an employee information that it possesses and that the employee needs to make an informed retirement decision may render his retirement involuntary. 750 F.2d at 943.
 
 
 8
 An agency's obligation to provide information cannot, of course, apply to information the agency does not have. See Clark v. United States Postal Serv., 989 F.2d 1164, 1167-68 (Fed.Cir.1993); see also Krizman, 77 F.3d at 439; Gaudette v. Department of Transp., 832 F.2d 1256, 1258 (Fed.Cir.1987) (no misinformation or failure to provide information simply because one option that was available to the employee was not fully delineated: "[p]etitioners knew as much as the agency concerning their future if they did not elect to transfer").
 
 
 9
 Substantial evidence supports the Board's finding that O'Clery "had access to as much information as did the agency when he retired." In particular, the evidence supports the Postal Service's contention that it was uncertain at the outset what form the restructuring would ultimately take, and that the early retirement option was designed to reduce the number of employees who would need to be placed and thus to avoid RIF actions.
 
 
 10
 There is also no force to O'Clery's argument that the Postal Service misled him when it failed to advise him "that the agency reorganization was actually a RIF" and that "the Postal Service's failure to so advise its employees and establish retention registers" rendered his retirement involuntary. That argument improperly equates what was later held to be a legal error in the characterization of the reassignment of other employees with the provision of misinformation to O'Clery.
 
 
 11
 O'Clery offers no evidence that the Postal Service ever advised him that if he were reassigned to a lower-graded position it would not be considered a RIF. His contention that he was aware of non-veterans who were placed in positions for which he was qualified does not constitute such evidence, as he had not been assigned to a new position by the time he retired and thus was never denied the retention and assignment rights that a preference-eligible employee would enjoy in the event of a RIF action. O'Clery also derives no support from the employee newsletter that bore a headline reading "No RIF for Supervisors." The newsletter was not published by the Postal Service, however, and despite the use of the term "RIF" in the headline, the article was actually reporting an agreement between the employee group and the Postal Service that no employees would be laid off and that all would be guaranteed no reduction in grade or pay. Moreover, the Postal Service's failure to volunteer an opinion prior to O'Clery's retirement about the legal effect of a possible decision to assign him to a lower-graded position did not constitute misinformation and thus could not have the legal effect of rendering his retirement involuntary. Accordingly, we agree with the Board that O'Clery failed to establish "that the agency misled him, withheld material information from him, or failed to correct erroneous information it had reason to know he was relying on in deciding to retire."