**Peggy A. KNIGHT, Petitioner,**

v.

**DEPARTMENT OF DEFENSE, Respondent.**

No. 02–3368.

United States Court of Appeals, Federal Circuit.

DECIDED: June 19, 2003.

Anne M. Wagner, Assistant General Counsel–Litigation, American Federation of Government Employees, AFL–CIO, of Washington, DC, argued for petitioner. With her on the brief were Mark D. Roth, General Counsel; and Charles A. Hobbie, Deputy General Counsel.

John H. Williamson, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him

on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel on the brief was Maj. Jeannine C. Hamby, Trial Attorney, United States Army, Litigation Division, Army Legal Services Agency, Department of the Army, of Arlington, VA. Of counsel was Heide l. Hermann, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC.

Before MICHEL, LOURIE, and GAJARSA, Circuit Judges.

MICHEL, Circuit Judge.

Petitioner Peggy A. Knight appeals the December 6, 1999 decision of the Administrative Judge ("AJ"), *Knight v. Dep't of Defense,* CH–0351-99-0381-I-1 (M.S.P.B. 1999), which became the final decision of the Merit Systems Protection Board ("Board"). The decision affirmed the Department of Defense's assignment of Knight, who had held a GS–11 Telecommunications Specialist position, to a GS–5 Computer Specialist position. The AJ concluded that the Board lacked subject matter jurisdiction over Knight's appeal as a reduction-in-force ("RIF") action under 5 C.F.R. § 351.901 because Knight was not demoted by RIF action, but voluntarily applied for and accepted the GS–5 position. However, the AJ held that the Board did have jurisdiction over the appeal as a reduction-in-grade action under 5 C.F.R. § 752.401, but on the merits determined that Knight was not entitled to grade retention. Because we conclude that the AJ erred in holding that the Board lacked RIF jurisdiction and erred in finding Board jurisdiction under § 752.401, we reverse both of the AJ's decisions on jurisdiction, vacate her determination on the merits regarding grade retention, and remand the case to the Board for determi-

nation on the merits under RIF regulations.

## BACKGROUND

In March of 1999, the Department of Defense conducted a RIF, abolishing all 225 positions at its Defense Megacenter Rock Island in Rock Island, Illinois, to consolidate from 16 to 6 the number of Defense Information Systems Agency mainframe data processing centers. The work previously performed at Rock Island was shifted to St. Louis. A new organization of 74 positions, the Regional Support Activity, Rock Island, was created to carry out a mid-tier data processing mission.

Knight was a GS–11 Telecommunications Specialist with the Defense Megacenter Rock Island. In October of 1998, Knight received a memorandum entitled "Reduction in Force (RIF)" from the Army's Civilian Personnel Advisory Center, notifying her that her position "ha[d] been identified for abolishment," that no vacancy was available for which she was qualified, that no position within three grades of her position existed for which she was qualified but was occupied by another employee with lower retention standing, and, therefore, that she would be separated when the RIF became effective, February 13, 1999.

Subsequently, the agency and Knight's union, the American Federation of Government Employees, entered negotiations regarding the reorganization/RIF of the Defense Megacenter Rock Island. An agreement resulted from the negotiation, providing, inter alia, that the agency "will to the maximum extent possible, utilize vacant positions to minimize the adverse effect on employees affected by the reduction-in-force." According to the agreement, the agency also "agree[d] that after round 2 RIF procedures [were] completed, [it was] to reengineer/establish a mini-

mum of 7 upward mobility positions" in the new Regional Support Activity. The positions were to be filled through a competitive selection process.

In December of 1998, the agency advertised, and Knight applied for, one of the 7 upward mobility positions. In a letter dated February 3, 1999, entitled "Amendment–Change to Lower Grade," the agency offered Knight the position of Computer Specialist at the GS–5 grade, but indicated her salary would be $46,310, the same as that of her GS–11 position with the Defense Megacenter. The letter also changed the effective date of the RIF to March 13, 1999. Paragraphs 3 and 5 of the February 3 letter stated:

> 3. You are eligible to retain your present grade and rate of pay for a period of 2 years following the effective date of your assignment to the position offered. Retained grade will be terminated on 14 Mar 2001....
>
> . . .
>
> 5. Declination of the above offer or failure to respond to this offer will result in your separation by RIF effective 13 Mar 1999. If you feel any of your rights have been violated, appropriate appeal procedures were outlined in [the RIF memorandum of October 1998].

Knight accepted the offer of the GS–5 position on February 4, 1999.

On March 10, 1999, the agency once again amended Knight's RIF notice. The March 10 letter restated the offer of the GS–5 position, but retracted information relating to the Board appeal rights on the ground that Knight had voluntarily accepted the position through a competitive selection outside of the RIF. In this letter, the salary for the GS–5 position offered was indicated as $47,951.

On March 13, 1999, the effective date of the RIF, the agency issued a Standard Form 50–B, documenting an abolition of Knight's GS–11 position. Effective March 14, 1999, the agency lowered Knight's grade from GS–11 to GS–5, with a salary decrease from $47,951 to $42,499.

On March 29, 1999, the agency sent Knight another letter entitled "RIF Cancellation." The letter stated that the February 3 and March 10 letters were issued in error and rescinded. The March 29 letter also stated: "you were placed in a position through merit promotion procedures to the new organization during the notice period of a reduction-in-force.... Your competition did not result in further [RIF] action."

Knight appealed to the MSPB, claiming that she did not receive the required grade retention in her new position, and also that she should have been appointed to a higher grade level than GS–5. The AJ ruled that the Board lacked jurisdiction over the appeal under the RIF regulation, § 351.901. However, the AJ found Board jurisdiction under § 752.401 for reductions in grade, but determined that Knight was not entitled to grade retention based on 5 C.F.R. § 536.103(c)(3), which governs grade retention in situations other than a RIF or a reclassification.

The AJ's initial decision became final because, in their opinions of June 21, 2002, *Knight v. Dep't of the Army,* 91 M.S.P.R. 639 (2002), the two Board members could not agree upon whether to grant Knight's appeal or even whether the Board had jurisdiction.

## DISCUSSION

■ This court reverses a decision of the Board if it is arbitrary, capricious, an abuse of discretion or contrary to law, procedurally defective, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *see also King v. Erickson,* 89 F.3d 1575, 1580 (Fed.Cir.1996). We review the Board's conclusion on jurisdiction *de novo.*

*Harants v. U.S. Postal Serv.,* 130 F.3d 1466, 1468 (Fed.Cir.1997).

There are two threshold issues on appeal: (1) whether the AJ erred in holding that the Board lacked jurisdiction over Knight's appeal under § 351.901, and (2) whether the AJ correctly held that the Board had jurisdiction under § 752.401. Knight argues that the AJ erred in holding that the Board lacked RIF jurisdiction, because the circumstances surrounding her placement in the GS–5 position demonstrate that the placement was made pursuant to a RIF. Knight cites *Harants* to support her position that the Board has RIF jurisdiction even when an employee voluntarily applies for and accepts a lower-grade position after receiving a RIF notice. The government, on the other hand, cites statements of this court as well as of the Board for its position that voluntary actions are not appealable to the Board. After considering the pertinent regulations and precedent, we conclude that the AJ erred on both jurisdictional decisions. Because the Board has no jurisdiction over Knight's appeal under § 752.401, the AJ's determination on the merits regarding grade retention must be vacated.

## A

"An employee who has been furloughed for more than 30 days, separated, or demoted by a reduction in force action may appeal to the Merit Systems Protection Board." 5 C.F.R. § 351.901 (2003).

> Demotion means a change of an employee, while serving continuously within the same agency:
>
> (i) To a lower grade when both the old and the new positions are under the General Schedule or under the same type graded wage schedule; or
>
> (ii) To a position with a lower rate of pay when both the old and the new positions are under the same type

ungraded wage schedule, or are in different pay method categories.

*Id.* § 210.102(b)(4). It is not disputed that Knight was demoted from a GS–11 Telecommunications Specialist position to a GS–5 Computer Specialist position while serving continuously within the same agency.

■ The government, however, contends that Knight voluntarily accepted the GS–5 position before the RIF was carried out, i.e., the demotion was the result of Knight's voluntary action rather than of the RIF. We disagree, and hold that the demotion was by RIF, over which action the Board has jurisdiction. Without the agency's RIF notices and subsequent placement, Knight's voluntary application for one of the "7 upward mobility positions" would not have resulted in her position change to the GS–5 level. Moreover, it was the agency that created the vacant positions, as a result of the negotiation with the union, to "minimize the adverse effect on employees affected by the reduction-in-force."

Knight contends that her demotion to the GS–5 position was taken in conjunction with a RIF, which, pursuant to 5 C.F.R. § 351.201(a)(2) (emphasis added), occurs when an agency *"releases* a competing employee from his or her competitive level by furlough for more than 30 days, separation, demotion, or reassignment requiring displacement, when the release is required because of lack of work; shortage of funds; insufficient personnel ceiling; reorganization." Knight notes that the new GS–5 position she was appointed to is part of the new Regional Support Activity that replaced the Defense Megacenter. Knight seems to argue that the demotion occurred because the agency released her from her prior competitive level by reason of reorganization. Although Knight emphasizes that the demotion took effect on March 14,

1999, after she was released from her prior GS–11 position on March 13, 1999, the government argues that what matters is that Knight voluntarily applied for and accepted the new position as of February 4, 1999, prior to the effective date of the RIF.

▆▆▆ We find it unnecessary to decide whether Knight's demotion was a result of the RIF defined in § 351.201(a)(2), because we conclude that 5 C.F.R. § 351.201(b) controls the case at bar, although this regulation is not cited by Knight. Section 351.201(b) provides: "when an agency, at its discretion, chooses to fill a vacancy by an employee who *has been reached for release* from a competitive level for one of the reasons in paragraph (a)(2) of this section [including reorganization], this part [part 351–RIF regulations] shall be followed." *Id.* § 351.201(b) (emphasis added). We hold that an employee may "have been reached for release" before she is actually released. In so holding, we note that the difference in word choice, i.e., "releases" in § 351.201(a)(2) compared to "has been reached for release" in § 351.201(b), necessarily indicates the difference in meaning of the two phrases so that "has been reached for release" occurs before "release." We also note that to read "has been reached for release" as actual release would cause actions taken entirely after completion of a RIF to fall under the RIF regulations, a nonsensical result. We thus hold that Knight had "been reached for release" when she received, in October 1998, the first RIF notice stating that her position had "been identified for abolishment."[1] Consequently, when Knight accepted the GS–5 position in February 1999, she had "been reached for release" even though she was not yet released. Thus, the agency chose to place Knight at the GS–5 position in February 1999 and effected its decision in March, and both of these events occurred after Knight had been reached for release. It .cannot be disputed that reorganization was the reason Knight was reached for release from her GS–11 position in October 1998. In summary, the agency's action fell precisely under § 351.201(b), which mandates that the agency follow the rest of the RIF regulations.

The RIF regulations additionally provide that "[a]n agency may also offer an employee assignment under § 351.201(b) to a vacant position in lieu of separation by reduction in force under 5 CFR part 351." 5 C.F.R. § 351.704(a)(1). Here, the agency in its February 3, 1999, letter offered Knight the GS–5 position in lieu of separation. The letter specifically stated "[d]eclination of the above offer or failure to respond to this offer will result in your separation by RIF effective 13 Mar 1999." Under §§ 351.201(b) and 351.704(a)(1), the agency was required to follow the RIF regulations once it notified Knight she would be released from her GS–11 position and offered her the GS–5 position in lieu of separation. The agency cannot reasonably argue that placing Knight in the GS–5 position is solely the result of her voluntary application rather than the RIF, as the agency's action is controlled by the RIF regulations.

We conclude that the Board has jurisdiction over Knight's appeal based on the above-discussed RIF regulations. The agency's action in choosing to place Knight in a vacant position after she was reached for release fell under the RIF regulations. Thus, the agency action, whether it satisfies § 351.201(a)(2) or (b) or § 351.704(a)(1), is a RIF action. Therefore, as the last subpart of the RIF regula-

---

1. Our holding here does not rely on the content of the subsequent letters of February 4, 1999 and March 10, 1999, which the agency later rescinded.

tions provides, the employee who is "demoted by a reduction in force action may appeal" to the Board. 5 C.F.R. § 351.901.

Our holding is supported by precedent. In *Harants*, this court stated:

> an assignment to a lower-grade position constitutes a RIF demotion even when the employee voluntarily applies for or is offered an assignment to that position, as long as the assignment was made after the agency had informed the employee that his original position had been abolished and that he had not been selected for assignment to a position at his former grade level.

*Harants*, 130 F.3d at 1469. *Harants* concerned a compliance RIF notice issued years after the 1992–1993 Postal Service reorganization. Although the employee in *Harants* had already been demoted when he received the compliance RIF notice, the holding of *Harants* was not so limited, but "specifically endorse[d] the holding in *Brown* [*v. United States Postal Serv.*, 58 M.S.P.R. 345 (1993)]." *Harants*, 130 F.3d at 1469. In *Brown*, the appellant accepted an offer to a lower grade position after being notified that he was not selected for a position in the restructured postal organization. *Brown*, 58 M.S.P.R. at 346–47. No RIF action seemed to have been effected when the appellant accepted the offer. The Board nevertheless held that his voluntary acceptance of the offer of assignment did not preclude Board jurisdiction over the appeal under the RIF regulations. *Id.* at 351–52. Thus, our holding that the Board has jurisdiction over Knight's appeal under the RIF regulation is supported by *Harants*, which adopted the holding of *Brown* as Federal Circuit law.

The government has not pointed to any precedent that contradicts our holding here. The government cites two RIF cases from this court, but they simply held that employees who voluntarily leave their positions in advance of an imminent RIF do not suffer an appealable adverse action. *Krizman v. Merit Sys. Prot. Bd.*, 77 F.3d 434 (Fed.Cir.1996); *Mueller v. United States Postal Serv.*, 76 F.3d 1198 (Fed.Cir. 1996). These cases are distinguishable because in both *Krizman* and *Mueller*, the employees decided to *retire* before any appealable RIF action occurred. Neither *Krizman* nor *Mueller* involved an action where the agency chose to place an employee in a vacant position after the employee had been released or reached for release from his or her competitive level.

The government also cites several Board decisions, which of course are not binding on this court. Moreover, *Owen v. Dept. of Army*, 74 M.S.P.R. 88 (1997), and *Tomasello v. United States Postal Service*, 73 M.S.P.R. 640 (1997), cited by the government, were decided before this court decided *Harants* and were overruled to the extent they were inconsistent with *Harants*. The only pertinent Board decision cited by the government is *Johnson v. Dept. of Army*, 83 M.S.P.R. 141, 145–46 (1999), which issued after *Harants*. There, the Board held that it had no RIF jurisdiction where the employee voluntarily accepted a lower-grade position before the effective date of a RIF. In an apparent attempt to limit *Harants*, *Johnson* stated that any Board precedent relied upon by *Harants* "was never intended to give appeal rights to employees who receive valid RIF notices and who then voluntarily accept offers of other positions (that the agency was not obligated under the RIF rules to make) before their RIF placements are effectuated." *Id.* at 144. *Johnson* reasoned that a RIF notice was a tentative proposal subject to modification or cancellation, and such proposed actions were not directly appealable. *Id. Johnson* further distinguished *Harants* on the ground that *Harants* and the Board decisions *Harants* relied on, such as *Brown*, all involved the Postal Service reorganization

that was undertaken without affording the reorganized employees any RIF rights.

We decline to adopt *Johnson's* reasoning. Statements made in *Johnson* cannot change the holding of *Harants*. Nor do they compel a different holding in this case. Mere statement in *Johnson* of the prior intent of the Board does not change what *Harants* stands for, because *Johnson* does not discuss or refute the specific reasoning provided by *Brown*, which was in turn adopted by *Harants*. Although a tentative action is not appealable, in the present case, Knight was already released from her previous GS–11 position and already demoted to the new GS–5 position when she appealed. Knight is not appealing the RIF notice of October 1998, a tentative proposal; she is appealing an actual release, and a demotion that immediately followed. Although *Johnson* is correct that *Harants* involves the Postal Service reorganization, we do not find the analysis of *Harants* limited to the Postal Service or to the 1992–1993 reorganization. Neither *Harants* nor *Brown* indicates that the reason for finding Board jurisdiction is because of the setting of the Postal Service or the reorganization undertaken without affording the reorganized employees any RIF rights. Instead, *Brown* held that the "timing of this offer [after the appellant was informed that he would not be retained in his former position], along with the agency's statements regarding the adverse consequences that might result from the appellant's failure to accept the offer ... cause[d] it to be comparable to an offer of assignment under subpart G [§§ 351.701–705] of the reduction-in-force regulations." *Brown*, 58 M.S.P.R. at 351. We thus find *Johnson's* bare assertion not persuasive.

We conclude that the Board has jurisdiction over Knight's appeal under the RIF regulations. As the RIF regulation dictates: "This part does not require an agency to fill a vacant position. However, when an agency, at its discretion, chooses to fill a vacancy ... this part shall be followed." 5 C.F.R. § 351.201(b). Thus, although an agency is not obligated to fill a vacancy under RIF, when it nevertheless chooses to do so and when the other requirements of § 351.201(b) are satisfied, the action becomes part of the RIF. Our holding, however, does not cover any and every agency action relating to a RIF. Only, as is the case with Knight, where the agency chooses to fill a vacancy in a successor organization with an employee who has been reached for release from a competitive level for a legitimate RIF reason, such as reorganization, must the agency follow the RIF regulations. Consequently, the Board does have jurisdiction over the appeal under § 351.901.

B

The AJ also held, without explanation, that the Board had jurisdiction over Knight's appeal under the reduction-in-grade regulation, 5 C.F.R. § 752.401. The AJ then ruled that Knight was not entitled to grade retention because the requirement of § 536.103(c)(3) was not satisfied.

We hold that the AJ erred in ruling that the Board had jurisdiction over Knight's appeal under § 752.401. Section 752.401 specifically excludes actions under a RIF. 5 C.F.R. § 752.401(b)(3) (2003). We have concluded that Knight's demotion to the GS–5 position was part of the RIF action. There is no allegation that Knight's placement in the new GS–5 position was based on any reason other than the pending RIF. The government at oral argument indeed conceded that the Board has no jurisdiction over Knight's appeal under § 752.401. We thus reverse the AJ's finding of Board jurisdiction under § 752.401.

## CONCLUSION

For the reasons set forth above, we reverse both the decision that the Board had no jurisdiction over Knight's appeal under RIF regulations and the decision that it had jurisdiction under the reduction-in-grade regulation. The AJ's determination on the merits for reductions in grade is vacated. On remand, the Board will decide the case under RIF regulations. Accordingly, the decision of the AJ is

*REVERSED, VACATED, AND RE-MANDED.*

## COSTS

No costs.