# United States Court of Appeals for the Federal Circuit

03-3326, 04-3005

ROBERT E. HAYES, VINCENT T. ALBERS, JR., ANDREW H. CONOVER, LAWRENCE M. DOHERTY, RONALD K. HEABERLIN, WILLIE L. LAMB, WALTER L. MOORE, JR., BERNARD G. OELTMAN, and GERALDINE PETTIT,

Petitioners,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Anton G. Hajjar, O'Donnell, Schwartz & Anderson, P.C., of Washington, DC, argued for petitioners.

Steven M. Mager, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Todd M. Hughes, Assistant Director, and Kelly B. Weiss, Attorney. Of counsel on the brief was Christopher J. Burton, Attorney, Commercial and Appellate Litigation, United States Postal Service, of Washington, DC. Of counsel was John S. Groat, Attorney, Civil Division.

Appealed from:   United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

03-3326, 04-3005

ROBERT E. HAYES, VINCENT T. ALBERS, JR., ANDREW H. CONOVER, LAWRENCE M. DOHERTY, RONALD K. HEABERLIN, WILLIE L. LAMB, WALTER L. MOORE, JR., BERNARD G. OELTMAN, and GERALDINE PETTIT,

Petitioners,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED:    December 8, 2004

_____

Before MICHEL, CLEVENGER, and BRYSON, Circuit Judges.

MICHEL, Circuit Judge.

Vincent Albers, Jr., Andrew Conover, Lawrence Doherty, Ronald Heaberlin, Willie Lamb, Walter Moore, Jr., Bernard Oeltman, and Geraldine Pettit (collectively, the "Albers petitioners"), as well as Robert Hayes, petition for judicial review of the decision of the Merit Systems Protection Board ("Board") dismissing their appeals for lack of jurisdiction. Burger v. United States Postal Serv., 93 M.S.P.R. 582 (2003). In Burger, the Board dismissed the consolidated appeals of a number of petitioners, including those of the Albers petitioners and Hayes, for lack of jurisdiction based on the determination that reduction-in-force ("RIF") demotions did not occur. Id. at 594-97 (Albers petitioners); id. at 601-04 (Hayes). Petitioners timely petitioned to this Court, and their petition was submitted for decision following oral argument on October 5, 2004. Because none of the petitioners suffered a RIF demotion, we affirm.

## I. Background

### A.

The Albers petitioners were employed as level 6 flat sorter machine ("FSM") operators for the United States Postal Service ("USPS") in Cincinnati, Ohio. They performed a number of duties, including operating FSM 881 series machines. The FSM 881 series machines require the mail to be "schemed." When scheming the mail, an operator remembers a large number of alphabetical and geographical groupings and keys these groupings into the mail sorting machine at appropriate times. Scheming was the "primary reason" that the positions held by the Albers petitioners were graded at level 6. In or before August, 2000, the USPS replaced the FSM 881 series machines at the Cincinnati, Ohio facility with automated flat sorting machine ("AFSM") 100 series machines, which do not require scheming.

The Albers petitioners were notified on July 19, 2000, that (1) their positions would be abolished on August 26, 2000; (2) they would receive "saved grade" if they successfully bid on a lower-grade position; and (3) they would each be reassigned "as an unassigned full-time regular clerk, PS-06" if they did not successfully bid on another position before August 26, 2000.[1] The July 19 letter uses the phrase "unassigned full-time regular clerk, PS-06." Other documents use other terms, such as "Unassigned Regular status," "unassigned regular," "level 6 unassigned FSM Operator position,"

---

[1] Both sides agree that the Albers petitioners each received the July 19 notice. The government further claims that the Albers petitioners each received a notice mailed on March 14, 2000, stating that (1) their positions would be abolished, (2) they could attempt to become a "successful bidder on a vacant bid," and (3) they would become an "unencumbered (unassigned) employee, unless [they were] a successful bidder on a vacant bid before that time." Because the content of the March 14 notice is not materially different from the July 19 notice, we need not address the government's claim.

"unassigned regular clerk," and "unencumbered employees." We use the term unassigned regular clerk to maintain consistency throughout this opinion.

Each of the Albers petitioners, except Conover, was reassigned as an unassigned regular clerk. Conover transitioned directly from a level 6 FSM operator position to a level 4 mail processor position on or about August 26, 2000. Furthermore, each of the Albers petitioners, except Doherty, Heaberlin, and Oeltman, successfully bid for a lower-grade position. Doherty, Heaberlin, and Oeltman continued to work as unassigned regular clerks without bidding on lower-grade positions.

The Albers petitioners appealed to the Board, claiming that they had suffered a RIF demotion.[2] The administrative judge who made the Board's initial decision agreed, determining that the Albers petitioners had been assigned to lower-grade positions because they were required to "operate a '100' machine that does not require keying duties or scheme knowledge but instead requires employees to manually prepare and load mail into a machine that performs these functions." The full Board reversed, reasoning that the Albers petitioners were not demoted because a position as an unassigned regular clerk is a position at the same grade and pay level. Burger, 93 M.S.P.R. at 596-97 (determining that the July 19 notice demonstrates that petitioners were informed that assignments as "'unassigned full-time regular clerk[s], PS-06'" constitute "assignments at the grade level of their former position" (alteration in original, emphasis added)). For the Albers petitioners who bid on lower-grade positions, the Board gave an additional reason why these petitioners had not suffered a RIF demotion,

---

[2] During litigation before the administrative judge, the USPS rescinded its abolishment of the Albers petitioners' positions. This litigation-induced rescission does not affect the determination in this case whether they were demoted in the time period before the rescission and, therefore, does not moot their petitions.

namely, that they had not received notice "that they would not be placed in positions at the PS-6 level" before they successfully bid on the lower-grade positions. Id. at 596. The Albers petitioners timely petitioned this Court for review of the Board's decision.

**B.**

The facts of Hayes' case are quite similar to those of the Albers petitioners. Hayes worked as a level 5 FSM operator in Manasota, Florida. On December 13, 2000, Hayes received notice that (1) his position was abolished, (2) he could bid on other positions and would receive saved grade if he did so, and (3) he had become an "unencumbered regular." Hayes was informed that as an unencumbered regular, he would retain "saved-grade" and that his "Form 50 [would] not be changed from [his] current level as an unencumbered flat sorter operator." Hayes successfully bid for, and was assigned to, a level 4 mail processor position with saved grade on January 12, 2002.

Hayes appealed to the Board, claiming that he had suffered a RIF demotion. The administrative judge who made the Board's initial determination rejected Hayes' appeal for lack of jurisdiction on two grounds. The administrative judge first determined that Hayes' reassignment as an unassigned regular clerk was merely a temporary detail and also determined that Hayes had not received notice that he would not be placed in a position at his former grade level before he bid for a lower-grade position. The full Board agreed and dismissed Hayes' appeal for lack of jurisdiction. Burger, 93 M.S.P.R. at 601-04 (reasoning that "[t]he administrative judge correctly found that, at the time the appellant filed his appeal, he occupied the position of Level 5 FSM Operator, and that, even though he may have performed the duties of a lower-graded position, he did not

allege, nor did the record reflect, that the agency assigned him to a position graded lower than his former position" and that his bid for a lower-grade position was voluntary).

## II. Discussion

### A.

Whether the Board has jurisdiction is a question of law we review without deference. Torain v. United States Postal Serv., 83 F.3d 1420, 1422 (Fed. Cir. 1996). The Board can have jurisdiction if and only if the petitioner makes non-frivolous allegations that satisfy the elements of the claim. Spencer v. Dep't of the Navy, 327 F.3d 1354, 1356 (Fed. Cir. 2003). Even then, an evidentiary hearing on jurisdiction may be needed. Furthermore, the Board's jurisdiction is limited to those "actions for which the right to appeal is specifically granted by law, rule, or regulation." Torain, 83 F.3d at 1422. The Board's jurisdiction over RIF-related appeals is provided in 5 C.F.R. § 351.901, which states that "[a]n employee who has been furloughed for more than 30 days, separated, or demoted by a reduction in force action may appeal to the Merit Systems Protection Board."

Only demotion is at issue in this case. Demotion is defined in 5 C.F.R. § 210.102(b)(4) in pertinent part as:

> a change of an employee, while serving continuously within the same agency: (i) To a lower grade when both the old and new positions are under the General Schedule or under the same type graded wage schedule; or (ii) To a position with a lower rate of pay when both the old and new positions are under the same type ungraded wage schedule, or are in different pay method categories.

Id. (emphases added).[3]

In general, voluntary changes in employment do not constitute RIF demotions. See Torain, 83 F.3d at 1423. In Harants v. United States Postal Service, this Court established an exception to the general rule, holding that "an assignment to a lower-grade position constitutes a RIF demotion even when the employee voluntarily applies for or is offered an assignment to that position, as long as the assignment was made after the agency had informed the employee that his original position had been abolished and that he had not been selected for an assignment to a position at his former grade level." 130 F.3d 1466, 1469 (Fed. Cir. 1997) (emphasis omitted). In Knight v. Department of Defense, 332 F.3d 1362 (Fed. Cir. 2003), we justified the Harants exception by reference to 5 C.F.R. § 351.201(b), which provides that RIF regulations must be followed if an employee has been "reached for release from a competitive level." The Knight court held that a federal employee had been reached for release when she received notice "that her position had been identified for abolishment" and that she would be separated because there were no positions for which she was qualified that were vacant or for which she had higher retention standing than the incumbent. Knight, 332 F.3d at 1364, 1369.

The Board has also determined that assignment to a temporary "detail" does not constitute a RIF demotion. Dixon v. United States Postal Serv., 64 M.S.P.R. 445 (1994), aff'd sub nom., Scorcia v. United States Postal Serv., 77 F.3d 503 (Fed. Cir. 1996) (Table). In Dixon, the Board reasoned that "[a] detail by its very nature is

---

[3] For simplicity, we will refer in this opinion to a demotion as a change of employment to a position with a lower grade or pay, even though whether a RIF demotion occurred is analyzed by reference to grade if the agency uses a graded wage schedule or by pay if the agency does not use a graded wage schedule.

temporary and involves no formal appointment since the employee continues to be the incumbent of the position from which he was detailed." 64 M.S.P.R. at 450.

We have jurisdiction under 28 U.S.C. § 1295(a)(9). Our standard of review is governed by 5 U.S.C. § 7703(c), which states that the Federal Circuit

> shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be--
>> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>> (3) unsupported by substantial evidence . . . .

Id.

**B.**

This Court's decision in Marcino v. United States Postal Service, 344 F.3d 1199 (Fed. Cir. 2003), is based on facts nearly identical to those in the present case. The Marcino court summarized the following facts:

> The petitioner is an employee of the United States Postal Service ("the agency"). In 1997, the petitioner was serving as a flat sorter machine operator at grade level 6 when the agency notified him by letter that his position would be abolished effective March 29, 1997, but he would nonetheless retain his seniority and could "bid on any existing vacancies for which [he was] eligible to bid." The letter further stated that if the petitioner were unsuccessful in bidding for a new position, he would become an "Unassigned Regular Clerk," effective March 29, 1997.
>
> On March 29, 1997, the agency converted the petitioner to an unassigned regular clerk with a saved grade level 6. The petitioner subsequently bid for a position as a flat sorter machine operator at grade level 5 and accepted this position on October 10, 1997.

Id. at 1200 (alteration in original).

Marcino appealed to the Board. Id. The administrative judge dismissed the appeal for lack of jurisdiction, determining that the Harants/Knight exception did not

apply because Marcino voluntarily bid for a lower-grade position without having been informed that he had not been selected for assignment to a position at his former grade level. Id. at 1201. The administrative judge's decision became final when two Board members could not reach a decision on Marcino's petition for full Board review. Id. at 1201-02.

This Court affirmed the administrative judge's determination. We first noted that Marcino had failed to support his jurisdictional allegations with affidavits or other evidence. Id. at 1204. We further held that Marcino's allegations were not sufficient to sustain jurisdiction, even if the allegations were supported by competent evidence, stating:

> The petitioner has not alleged that the agency informed him that he would not be reassigned to a position at the same grade level or that there were no positions available at his grade level, as was the case in Harants and Knight. Had that been the case, it would have been futile for the petitioner to await his actual separation, and his acceptance of the level 5 position would have been involuntary or, put differently, he would have been reached for release before he applied for the level 5 position. Instead, the petitioner in the present case, like the petitioner in Torain, was merely informed that his position was being abolished. The petitioner was then converted to an unassigned regular clerk with a saved grade level. The petitioner had the option of awaiting an appealable adverse action either an actual reduction in grade or being informed by the agency that there were no alternative level 6 positions available. Yet, as in Torain, the petitioner "simply accepted an alternative employment option" by bidding for and accepting a position as a level 5 sorter.

Id.

The facts of this case are nearly identical to those of Marcino. Marcino held the same position, level 6 FSM operator, that all but one of petitioners held, with Hayes holding a level 5 FSM operator position. Just like Marcino, petitioners' positions were abolished. The written notice received by Marcino is materially indistinguishable from

the written notice received by petitioners. Marcino was reassigned as an unassigned regular clerk, and all petitioners, except for Conover, likewise spent at least some time working as an unassigned regular clerk. After working as an unassigned regular clerk, Marcino successfully bid to a lower-grade position with saved grade and pay. Similarly, all petitioners, except Doherty, Heaberlin, and Oeltman, successfully bid to lower-grade positions.

Petitioners attempt to draw four factual distinctions between this case and Marcino, none of which is material.[4] First, petitioners contend that they, but not the petitioner in Marcino, were required to perform the duties of lower-grade positions as unassigned regular clerks. There is nothing in Marcino, however, to suggest that the substantive duties performed by the petitioner in Marcino while working as an unassigned regular clerk materially differ from the duties performed by petitioners in this case while working as unassigned regular clerks.

Furthermore, under Federal Circuit precedent, a reduction in an employee's duties and responsibilities, by itself, does not constitute a RIF demotion. Wilson v. Merit Sys. Prot. Bd., 807 F.2d 1577, 1580 (Fed. Cir. 1986). In Wilson, the petitioner argued that his reassignment from a position in San Francisco, California to a position in Bakersfield, California constituted a RIF demotion because his responsibilities were reduced. In San Francisco, he "was responsible for more than 9,000 Postal employees and administered a payroll of approximately $275 million," whereas in Bakersfield, he

---

[4] Petitioners also contend that Marcino does not govern this case because whether their bids for employment were voluntary "is not an issue presented in this case." This argument is easily rejected because the Board explicitly held that it did not have jurisdiction because petitioners' bids "constitute voluntary assignments over which the Board lacks jurisdiction under the RIF regulations." Burger, 93 M.S.P.R. at 596 (emphasis added).

"was responsible for less than 2,000 employees and administered a payroll of approximately $50 million." Id. at 1578. The Wilson court rejected the petitioner's argument, holding that "[a] reduction in responsibility without a concurrent reduction in grade or pay, however, is not appealable to the Board." Id. at 1580. Thus, petitioners' argument that their duties were reduced is irrelevant.

Second, petitioners contend that Marcino is distinguishable because the USPS, in this case, "relies on the demonstrably false premise that, by withholding issuance of a Form 50 formally reassigning" petitioners to lower-level positions commensurate with the lower-level duties they were required to perform as unassigned regular clerks, petitioners remained in positions at the same grade and pay and, therefore, were not RIF demoted. Petitioners contend, as to the Albers petitioners, for example, that "the Postal Service seeks to circumvent the law by denominating the Albers Petitioners Level 6 FSM Operators, even though they have no FSM machine to operate." We disagree with petitioners' view of the facts of this case. As unassigned regular clerks, petitioners were no longer required to scheme the mail but continued to be assigned to other duties within the standard position description of the positions they occupied before the AFSM machines were introduced. For example, the local memorandum of understanding provided to Hayes explains this well:

> As unencumbered FSM Operators, they may be assigned work within the position description of their bid. They may perform all the duties that they performed before they became unencumbered. Specifically, they can be assigned to the FSM-1000 and FSM-881, manual distribution or other duties that they normally perform.

(Emphasis added.) Thus, because petitioners have failed to demonstrate that they performed duties inconsistent with the position to which they were officially assigned,

we find unpersuasive petitioners' factual claim that the USPS was required to "formally reassign[]" them to lower-grade positions.  Furthermore, in addition to advancing a faulty factual premise, petitioners have provided no legal argument, much less authority, as to why a failure formally to so reassign them would be actionable, especially given the straightforward holding in Wilson that a mere change in duties or responsibilities does not constitute a RIF demotion.  In this case, we take no view on that legal issue.

Third, several petitioners distinguish their cases from Marcino based on the length of time spent working as unassigned regular clerks.  These petitioners argue that the length of time they spent working as unassigned regular clerks was sufficiently long to constitute a RIF demotion.  The petitioner in Marcino worked for approximately six and a half months as an unassigned regular clerk.  Marcino, 344 F.3d at 1200.  In this case, only Albers and Conover spent less time than that as unassigned regular clerks.

Although we discuss timing in both Marcino and Torain, in neither case did we suggest that an employee need wait only for a limited period of time while working as an unassigned regular clerk.  Further, Marcino's language referring to waiting appears to be based entirely on language from Torain.  Compare Marcino, 344 F.3d at 1204 ("The petitioner had the option of awaiting an appealable adverse action either an actual reduction in grade or being informed by the agency that there were no alternative level 6 positions available.") (emphasis added), with Torain, 83 F.3d at 1423 ("Torain simply accepted an alternative employment option in lieu of waiting for eventual reassignment.") (emphasis added).  Nor does the language of 5 C.F.R. § 210.102(b)(4) support an argument that timing spent working as an unassigned regular clerk is relevant.  Instead, section 210.102(b)(4) limits demotions to changes of an employee

"[t]o a lower grade" or "[t]o a position with a lower rate of pay," without discussing timing at all.

Petitioners rely on <u>Dixon</u> in contending that timing is important, but their reliance on <u>Dixon</u> is misplaced. <u>Dixon</u> involved a USPS restructuring in which the petitioners "were detailed, i.e., temporarily assigned to agency Placement Centers where they were to obtain other positions within the agency." 64 M.S.P.R. at 447. Petitioners' reassignments in this case as unassigned regular clerks, however, are not temporary details. Although some aspects of the unassigned regular clerk position may perhaps make an unassigned regular clerk's schedule and daily duties less predictable than those of an assigned regular employee, that does not mean that an unassigned regular clerk position is merely a temporary detail. Accordingly, petitioners have failed to demonstrate the relevance of the length of time during which they worked as unassigned regular clerks to their contention that a RIF demotion occurred.

Fourth, the petitioners who bid for lower-grade positions also contend that their cases are distinguishable from <u>Marcino</u> because they received non-written information sufficient under the <u>Harants</u>/<u>Knight</u> exception to demonstrate that they suffered a RIF demotion.[5] These petitioners cite evidence that they were made unassigned regular clerks and that the collective bargaining agreement contains a statement that employees whose jobs are eliminated "shall receive saved grade." These facts, however, do not materially distinguish their cases from <u>Marcino</u>. On the contrary, the opinion in <u>Marcino</u> explicitly recites that the petitioner was made "an unassigned regular

---

[5] These petitioners concede that the written notification they received did not explicitly state that they had not been selected for positions at the same grade and pay.

clerk with a saved grade level 6." Marcino, 344 F.3d at 1200. Additionally, these petitioners cite evidence that they were not placed in residual level 6 assignments while working as unassigned regular clerks and that all the level 6 FSM operator positions at the local facility were abolished. These facts also do not distinguish these petitioners' cases from Marcino, which states, "The agency conceded that at the time the petitioner accepted his level 5 position, 'all Level 6 positions were being abolished or reverted due to automation and mechanization changes.'" Id. (emphasis added).

Because petitioners have failed to distinguish Marcino, we are bound by its holding. Accordingly, the Board properly determined that it did not have jurisdiction because petitioners did not suffer RIF demotions.

We note that petitioners also take issue with the Board's finding that "unassigned regular clerk" is a position at the same grade and pay as petitioners' FSM operator positions. Petitioners argue that a change in designation to "unassigned regular" is merely a change in the employee's status within a position but does not change his position. More specifically, an employee has both a position and a status as either assigned or unassigned in a duty assignment. A position is a formally described set of duties found in a standard position description, whereas a duty assignment is a set of duties within a position to be performed at specific times. Being changed from assigned to unassigned status, therefore, involves the elimination of a specific duty assignment, but not a change in their positions.

We need not determine, however, whether this finding is supported by substantial evidence because even if we adopt petitioners' view of the facts, we must affirm the Board's decision. Under the Board's theory, petitioners were not demoted

because "unassigned regular clerk" is a position at the same grade and pay as their former positions. Under petitioners' theory, their positions were not changed. But if their positions were not changed, they were not demoted, because demotion requires reassignment to a position with lower grade or pay. Accordingly, any error in the Board's finding would be harmless.

## III. Conclusion

In sum, because petitioners have failed to distinguish Marcino, which binds us to hold that petitioners did not suffer RIF demotions, and have not otherwise demonstrated that the Board's decision was not in accordance with the law or supported by substantial evidence, we affirm.

AFFIRMED